## MACKEY & MORRIS v. C. DeBLANC—EGAÑA et al., Warrantors.

Persons owning or chartering a steamboat, are bound by the acts of the Captain employed by them in matters appertaining to the regular business of the boat.
So also a planter for engagements entered into for him by his overseer acting strictly in the line of his employment.

APPEAL from the Fifth District Court of New Orleans, *Augustin*, J. *Michel & Gilmore*, for plaintiff. *C. Dufour*, for defendant and appellant. *G. Legardeur* and *St. Paul & Bouny*, for the warrantors.

BUCHANAN, J. Plaintiffs sold *Juan Y. De Egaña*, a merchant residing in New Orleans, a flatboat load of coal, deliverable at the Fanny plantation, belonging to *Egaña*, on the left bank of the river, thirty or forty miles below town. The plaintiffs sent the flatboat down the river in charge of an agent, who being driven to the right bank, when opposite the Fanny plantation, by a strong north east wind, tied up the boat to the bank in a position of safety, and the next morning crossed the river and informed the overseer and manager of the plantation of the arrival of the coal, and of the reason which detained it at the opposite side of the river, namely, the violence of the wind, which, by this time, had increased to a gale. The overseer expressed great anxiety to have the coal, as they were out of fuel for the making of the crop of sugar, it being the 24th of December, and the grinding of the cane not completed. Contrary to the opinion of the plaintiffs' agent, who thought it advisable to wait

48

until the wind should subside, before attempting to bring the flatboat across the river, the overseer engaged the steamboat Red River, (then chartered by defendant and running for his account,) to tow the flatboat and her cargo of coal to the Fanny plantation, across the river, in the teeth of the gale of wind then blowing.

On being applied to for this purpose by *Norman*, the overseer of *Egaña*, the captain of the steamboat at first positively refused, on account of the great risk of sinking the flatboat; but was finally pursuaded to undertake the job, by a formal guaranty given him by the overseer in the name of *Egaña*, the owner of the plantation, to be responsible for the value of the coal boat in case of accident, the overseer adding his individual guaranty to the same effect. The result was what had been anticipated by many persons who have given their evidence, and feared by the captain of the steamboat himself. Notwithstanding every precaution used in approaching the flatboat to take her in tow, the contact between the steamboat and the flatboat, in the violent agitation of the elements at the time, was fatal to the latter, which was stove and sunk in a very few minutes, in deep water, being a total loss. Plaintiffs claim of defendant in this action the value of the coal, for what is termed in the petition, "the gross imprudence and carelessness of the commander of the steamboat in attempting to take the flatboat and tow her across the river." The answer was a general denial.

By an amended answer, the defendant specially pleads:

1. That he is not personally liable for the acts and doing of *Captain Louallier*, the commander of the steamboat Red River, in the premises.

2d. That if liable for the loss of the flatboat and coal in question, he is entitled to call in warranty *Juan Y. Egaña* and *Thomas H. Norman*, upon the special warranty given by the latter in his own name and as agent of the former, to *Captain Louallier*, against all risk and responsibility by reason of the attempt to tow the flatboat.

Defendant accordingly calls said *Egaña* and *Norman* in warranty of this demand, and prays for such judgment over against them, as may be rendered against himself in favor of plaintiffs.

*Egaña* pleads the general issue; admits that *Norman* was his overseer; but denies that he had authority to bind him in the manner alleged in the call in warranty. Lastly, he avers that the steamboat Red River was engaged by plaintiffs' agent to tow the flatboat to the landing of the Fanny plantation, where the coal was to be delivered, and consequently the loss should be borne by plaintiffs.

*Norman's* representative (he having died in the mean time) pleads an exception, which it is unnecessary to notice, and the general issue.

The facts of the case we assume to be as we have stated them, having duly considered the conflict which certainly exists in the depositions of some of the witnesses, with the view thus taken.

That conflict principally exists in relation to the very material fact of the agency of *Burfield*, in the employment of the steamboat Red River to tow the flatboat. Three witnesses, *Vollman*, *Schexnaider* and *Duncan*, have been examined for *Norman*, in relation to the conversation which took place between *Burfield* and *Norman* when the former came to the Fanny plantation and gave notice of the arrival of the coal. The testimony of these witnesses is irreconcilable with that of *Burfield* in some respects. But *Duncan*, the only one of

the three who was cross-examined, corroborates, on his cross-examination, the statement of *Burfield*, that *Norman* had given to *Burfield* a paper or note for *Captain Louallier*, requesting him to take the flatboat in tow. And what corroborates still further the testimony of *Burfield* is the fact, stated by no less than six witnesses, to wit, the captain, mate, two clerks, and two passengers of the steamboat Red River, that *Norman* came on board of the boat and engaged her to tow the flatboat, by solicitations urged against the objections of the captain, and finally successful, through the proffer of a guaranty against responsibility.

The circumstances of the hiring of the steamboat are abundantly proved by those witnesses, and the tacit participation or assent which would be implied from the conveyance by *Burfield* of *Norman's* letter to *Captain Louallier*, is wanting; for it is proved that letter was never delivered.

Two questions of law arise in the case in relation to the capacity of *Louallier* to bind defendant, and of *Norman* to bind *Egaña*, in relation to the matters involved in this litigation.

We solve both those questions in the affirmative.

It is admitted by the pleadings, that the steamboat Red River was chartered by the defendant for a coasting trade in the parish of Plaquemines. It is proved that she was running under this charter-party for account of defendant, and that the captain of the steamboat was employed (that is to say paid) by him at the time of this occurrence. Two witnesses, captains of boats in the same trade, show that the towing from one side of the river to the other, or down the river, of vessels conveying goods, &c., for planters, was a part of the regular business of the Red River as a coasting packet in the parish of Plaquemines.

The other question of law, namely, the capacity of *Norman* to bind *Egaña* in the premises, is equally clear. The pleadings admit that *Norman* was the overseer of *Egaña's* plantation. It is in proof that *Norman* had the entire control and management of this plantation. *Egaña*, the owner, was never seen there by witnesses who constantly visited it for years on business. On other occasions similar contracts to this had been made by *Norman* for this plantation. Besides, it is plain from the evidence, that *Norman* was acting strictly in the line of his employment, in making a contract for the transportation of this coal from the other side of the river. It is proved that the coal was urgently needed for the use of the plantation. It is not for us to say what injury *Norman* may have anticipated to the crop confided to his care, from a delay of a few days in the delivery of this fuel. This consideration might, in his eyes, acting with an intelligent view of the interests of his employer, have been well worth the risk of the value of the flatboat load of coal. *Norman* was *Egaña's* agent for receiving and delivering of the coal. He was without authority to receive it any other place than at the plantation; and in fact, his witnesses swear that he refused to accept delivery of it elsewhere. But it is not the less certain, that he engaged the steamboat to facilitate its delivery at the plantation, and that, as the only means of engaging the steamboat, he pledged the guarantee of his employer *Egaña* against any reclamation on the part of the owners of the coal, in the case of its loss. Under the circumstances we consider *Egana* bound by this guarantee. It is admitted, as well as proved, that *Norman* was the manager of *Egana's* plantation. That plantation was cultivated in sugar cane and *Norman* was then engaged in taking off the

# 380 SUPREME COURT OF LOUISIANA,

MACKEY
v.
DEBLANC.

crop. The supply of fuel indispensable for that purpose was an essential part of his administration. The Civil Code, Article 2969, says: "Powers granted to persons who exercise a profession, or fulfil certain functions of doing any business in the ordinary course of affairs to which they are devoted, need not be specified, but are inferred from the functions which these mandataries exercise."

It does not appear that plaintiffs were bound to make delivery of the coal at any specified time. The coal boat was moored in perfect safety, when plaintiffs' agent, *Burfield*, reported himself to *Norman ;* and *Burfield* was disposed to have kept his boat so moored, until the wind should have lulled, before attempting to make the delivery, which he could then have done without risk. As we have seen, the agent of plaintiffs in no manner authorized and sanctioned the attempt to tow the flatboat across the river. Indeed that fact, which is disputed in argument, clearly results from the demand of a guarantee by Captain *Louallier* from *Norman*. Why this guarantee, if the agent of the owners of the flatboat authorized her being taken in tow by the steamboat ?

We are of opinion that plaintiffs have made out a case against defendant, as temporary owner of the steamboat Red River. The attempt to tow the flatboat was an act confessedly of great imprudence and unauthorized by plaintiffs. C. C. 2295.

We are likewise of opinion, that a contract of guarantee is proved against *Mr. Egana*, which obliges him to indemnify defendant for the consequences of the imprudent act which was the cause of plaintiffs' action.

It is, therefore, adjudged and decreed, that the judgment of the District Court, in favor of plaintiffs against defendant, be affirmed; that the judgment dismissing the call in warranty to *Juan Y. De Egana*, be reversed ; that defendant, *Charles DeBlanc* have judgment against said *Juan Y. De Egana* for the sum of $2,579, and costs of the District Court; and that the costs of appeal be paid, one-half by defendant, and one-half by the warrantor, *Egana*.

VOORHIES, J., dissenting. The plaintiffs seek to make the defendant liable for the loss of a flatboat load of coal, which was sunk by the steamboat Red River on the 24th of December, 1853. It is alleged in their petition, that this coal was sent down by them to be delivered, a part at the Fanny plantation and the remainder at other plantations ; that on arriving in the neighborhood of the Fanny plantation, the flatboat was compelled, by a strong wind then prevailing, to stop on the opposite shore ; that the steamer Red River came towards the flatboat on the 24th of December, 1853, whilst the same wind continued to prevail, with the alleged intention of towing the same across the river to the Fanny plantation; and in doing so, came in collision with and instantly sunk the flatboat ; that under the circumstances it was dangerous and hazardous for the steamer to approach the flatboat, and that, in attempting to take and tow her across the river, the captain acted with gross imprudence and carelessness, and was warned of the danger of approaching the flatboat, as he would inevitably sink her.

The defendant, after pleading the general issue, avers, among other things, that when the steamer Red River stopped to land some freight at the Fanny plantation, on the 24th of December, 1853, *Thomas H. Norman*, the overseer and special agent of *Juan Y. De Egana*, in the exercise of his agency, told the captain that there was a coal boat on the other side of the river which he urgently required, as it contained coal for the use of the plantation, representing

that he would hold the steamer harmless in case of any accident; that this request was the result of an understanding between *Norman* and the plaintiffs' agent, who had charge of the flatboat. He also avers, that if he should be considered liable under the circumstances, that then *Egana* and *Norman* are bound to him in warranty, and therefore prays that they be accordingly cited.

The testimony of *Burfield*, the plaintiffs' agent, shows that he was compelled by the force of the wind to land the flatboat opposite to the Fanny plantation on the night of the 23d of December; that in the morning at sun-rise he crossed over to the Fanny plantation, where he remained about an hour. The wind was then blowing lightly, but greatly increased until 1 o'clock P. M. *Mr. Norman* told him that he would get the flatboat towed across, and directed him to go to *Mr. Duncan*, the carpenter, and get an order from him upon the steamboat Red River, *authorizing him to tow the flatboat over*, which he did; and with this order in his pocket, he went back to his flatboat, where he remained until she was sunk. They also gave him a flag to hail the steamer, *but did not use it because the wind was too high.*

*Theodore Dietz* testifies, that at the time the steamboat was approaching, he saw the men on the flatboat preparing for receiving the steamer; they were hauling ropes.

Taking the testimony of these witnesses in connection with all the other circumstances, it would be unreasonable to come to any other conclusion than that suggested by the defendant's answer, that the request of *Norman* was the result of an understanding between him and the plaintiffs' agent. If such had not been the case, why did *Burfield* take the order and flag from the plantation? On approaching the flatboat, why the preparation for receiving the steamer by hauling ropes, &c. ? There is not a title of evidence which shows that *Burfield* ever made any resistance or objection to the act. On the contrary, it is evident that he stood on the flatboat awaiting the steamer to tow her across the river to the Fanny plantation, according to his understanding with *Norman*. Hence, as the act was done with the permission of the plaintiffs' agent, it is clear that the defendant cannot be considered as a trespasser.

But it is insisted by the plaintiffs that the defendant is liable, because the loss was occasioned by the gross imprudence and carelessness of the captain.

The evidence shows conclusively, that the captain declined at first to accept the proposition of *Norman* on account of the peril, but afterwards assented on the grounds stated in the defendant's answer. It is clear, according to the maxim "*volenti non fit injuria*," that the defendant cannot be held liable to the plaintiffs for the loss of their boat load of coal.

In regard to the question as to the liability of *Egana* to the plaintiffs, it is clearly a matter which cannot be considered under the pleadings. A judgment in favor of the defendant in the present suit, must necessarily operate as a discharge to him on the claim in warranty.

I am, therefore, of opinion that the judgment of the court below ought to be reversed and given in favor of the defendant.